UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMIAH'S INTERNATIONAL
TRADING COMPANY, INC.,

    Plaintiff,

v.                                  Case No. 8:17-cv-2234-T-30TBM

REN MEDIA GROUP USA, INC.,

    Defendant.
                                  /

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court following a hearing conducted November 9, 2017, on:

(1)     **Defendant's Motion to Compel Arbitration and Stay Proceedings** (Doc. 8) and Plaintiff's response (Doc. 13);[1] and

(2)     **Plaintiff's Motion for Preliminary Injunction** (Doc. 10) and Defendant's response (Doc. 15).

As discussed below, since the filing of the Motion for Preliminary Injunction, circumstances have changed. Defendant purportedly has ceased operating and is in the process of winding up its affairs. As a consequence, Plaintiff sought a temporary restraining order (Doc. 22), which was denied (Doc. 23). By that Order, the district judge permitted Plaintiff to "present the verified facts contained within [its motion] at the November 9, 2017 hearing before the

---

[1]Defendant also filed a "Supplemental Motion to Compel Arbitration and Stay Proceedings." (Doc. 14).

Magistrate Judge." *Id.* As such, this Court has also considered Plaintiff's assertions presented in its motion for temporary restraining order. (Doc. 22).

**I.**

Plaintiff Jeremiah's International Trading Company, Inc. ("JITC") initiated the instant action in State court on September 15, 2017. (Doc. 2). Defendant Ren Media Group USA, Inc. ("Ren") removed the action to this court on September 26, 2017, alleging diversity jurisdiction. (Doc. 1).

By JITC's Verified Amended Complaint, it alleges it formerly operated a live television auction and sales business, under the name America's Auction Network ("AANtv"). (Doc. 9 at ¶ 7). JITC and Ren entered into an Asset Purchase Agreement on January 19, 2017, amended on February 23, 2017 (*see* Docs. 9-1, 9-2), whereby Ren sought to purchase some of the assets of JITC and assume some obligations of JITC. (Doc. 9 at ¶ 8). The Purchase Price under the Agreement was $5,000,000.00. *Id.* at ¶ 9. Pursuant to section 3.3 of the Agreement, Ren was to pay into an escrow account $4,750,000.00. *Id.* at ¶ 11. Ren was unable to locate an escrow agent, and the parties amended the Agreement to allow payment in installments. *Id.*; *see also* Doc. 9-2. Plaintiff asserts claims for breach of contract (Count I), conversion (Count II), tortious interference with business relationships (Count III); and breach of fiduciary duty (Count IV).

First, JITC alleges breach of the written contract on several bases:

1) Ren paid JITC the amount of $4,415,000.00 due under the Agreement, but has failed to pay the installment of $585,000.00. Doc. 9 at ¶ 37;
2) JITC alleges that it prepaid airtime expense to Directv, in the amount of $146,576.00, which Ren has failed to repay in accordance with the section 2.5 of Agreement. *Id.* at ¶ 38;

2

3)     Ren has failed to pay the consulting fee of Jerry P. Hartman, which was to be paid biweekly for one year for a total of $52,000.00, pursuant to the section 2.6 of the Agreement. *Id.* at ¶ 39;

4)     Pursuant to section 4 of the Agreement, JITC was to be provided four hours of on air "sell off" time weekly, beginning on the first Thursday after closing and continuing through December 31, 2017, from 8:00 p.m. to 12:00 a.m. EST. JITC claims Ren unilaterally changed the hours of the Sell-Off to 9:00 p.m. to 1:00 a.m., without written approval and adequate compensation to JITC. *Id.* at ¶ 40;

5)     Ren has failed to pay JITC for sell off transactions, in the amount of $206,381.92, through August 31, 2017. *Id.* at ¶ 41;

6)     Ren has failed to reimburse JITC for cancelled or returned items in the amount of $3,087.20. *Id.* at ¶ 42;

7)     Ren has failed to notify JITD of returns and cancellations, thereby preventing JITC from timely honoring customer's requests or from correcting or otherwise promptly satisfying customer requests, in breach of the Contract. *Id.* at ¶ 42;

8)     Ren has set up for customers to "lay-away" items purchased during the sell off period, which is not permitted under the Contract. *Id.* at ¶ 43; and

9)     Ren has failed to reimburse JITC in the amount of $6,277.55, for Broadcaster errors and omissions insurance, Google and Webpair Services, as required under section 2.5 of the Agreement. *Id.* at ¶ 44.

As a result of the above breaches, JITC seeks $799,322.67 that it claims is due and owing, plus attorney's fees, costs, and interest. *Id.* at ¶ 45.

By Count II, JITC alleges that Ren has taken possession of and wrongfully converted JITC assets and money received from sell-off transactions, for Ren's own use without the consent of JITC. *Id.* at ¶¶ 49–52. By Count III, JITC asserts various ways in which Ren has interfered with its business relationships, such as preventing it from airing its sell-off period; interfering with JITC employees' ability to do their work; using JITC and Mr. Hartman's name to apply for and obtain credit; and interfering with JITC's customer relationships. *Id.* at ¶¶ 56–62. Finally, by Count IV, JITC alleges breach of fiduciary duty under section 4 of the Agreement, due to Ren's failure to pay JITC the proceeds received, less any actual credit card fees incurred in

connection thereof, within thirty days of each sell-off transaction in the amount of $206,381.92. *Id.* at ¶¶ 76–79.

Ren has not yet filed an answer to the Amended Complaint, but has filed a motion to compel arbitration and stay these proceedings. JITC does not oppose arbitrating this dispute, but seeks interim injunctive relief from the Court.

**II.**

By its motion (Doc. 8), Defendant seeks to compel arbitration, pursuant to the parties' Asset Purchase Agreement, which contains an arbitration provision at section 11.7. The Agreement provides, in pertinent part:

> ...In the event of any controversy, dispute or claim arising out of or related to this Agreement or the breach thereof, Seller and Buyer agree to meet and confer in good faith to attempt to resolve the controversy, dispute or claim without an adversary proceeding. If the controversy, dispute or claim is not resolved to the mutual satisfaction of Buyer and Seller within ten (10) business days of notice of the controversy, dispute or claim, Buyer and Seller agree to waive their rights if any to a jury trial, and to submit the controversy, dispute or claim to an arbitrator for binding arbitration. The arbitrator shall be a person knowledgeable in the workings of media companies. Any award of damages shall be subject to Paragraph 10 above. Buyer and Seller agree that the hearing before the arbitrator shall be concluded within nine (9) months of the filing and service of the complaint unless the arbitrator shall decide otherwise. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any dispute resolution proceedings contemplated by this provision shall be as confidential and private as permitted by law. The Party prevailing in the arbitration shall be entitled to be reimbursed by the other Party its reasonable attorney's fees, costs and expenses including but not limited to expert fees related to or arising out this Agreement, and/or breach or enforcement thereof.

(Doc. 9-1 at 15–16).

4

Plaintiff does not dispute that the Agreement contains an enforceable arbitration provision, but asks the Court to enter a preliminary injunction pending arbitration. (Doc. 13).

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLC v. Cocchi*, 565 U.S 18, 21 (2011) (per curiam) (citations omitted).

Upon consideration, **Defendant's Motion to Compel Arbitration and Stay Proceedings** (Doc. 8) should be granted, the parties ordered to arbitration in accordance with the terms of their Agreement, and this action stayed pending completion of arbitration.

**III.**

By its motion (Doc. 10), Plaintiff seeks a preliminary injunction against Ren, based on the facts set out in its Amended Complaint, discussed above. JITC claims injunctive relief is appropriate in cases of tortious interference with business relationships as well as breach of fiduciary duty, and asserts that the circumstances are such that a preliminary injunction is warranted. JITC asks the Court to enter an injunction requiring Ren to a) post security in the amount of $799,322.67; b) provide four (4) hours of Sell Off time every Thursday through December 31, 2017, from 8:00 p.m. to 12:00 a.m. EST; c) enjoin Ren from any communication with a current or potential JITC customer whereby Ren encourages the customer to cancel an order with JITC; d) enjoin Ren from any communication with a current or potential JITC customer whereby Ren disparages or speaks negatively regarding JITC in any way; and e) enjoin Ren from cancelling a JITC customer's order after a customer contacts Ren to modify or change

an order, other than when the customer specifically requests to cancel an order with JITC. (Doc. 10 at 15–16). In support, JITC submits a copy of the Agreement and Amendment thereto. (Docs. 10-1, 10-2). JITC has also submitted the Declaration of Jerry P. Hartman, President of JITC. (Doc. 19).

Defendant responds that a preliminary injunction is unwarranted. In brief, Ren argues the motion should be denied because these disputes should be decided in the arbitral forum agreed to by the parties; a preliminary injunction restraining assets to secure an anticipated money judgment or arbitration award is not permitted; Plaintiff does not have a substantial likelihood of success; and Plaintiff has not demonstrated imminent irreparable harm. In addition, Ren argues JITC has failed to satisfy Federal Rule of Civil Procedure 65 and Local Rule 4.06 with regard to the bond requirements and in any event the FAA bars preliminary injunctive relief. In support, Ren submits the Declaration of Phillip Patterson, Chief Financial Officer of Ren (Doc. 16) and the Declaration of Dmitry A. Lesnevsky, Chairman of Ren's Board of Directors (Doc. 17).

On November 6, 2017, JITC filed an Emergency Motion for Temporary Restraining Order. (Doc. 22). Therein, JITC asserted that, effective November 3, 2017, Ren had closed its business and gone off the air. It claimed the close of the business constitutes irreparable harm, because "JITC entered into the Agreement to sell its assets with the understanding, and right, to be able to continue to market and sell merchandise through Ren's broadcasts.... Ren has wiped out JITC's ability to conduct business." In addition, it claims Ren has refused to make payments, misstated JITC's current financial situation to vendors and customers, and, without immediate relief, Ren will continue to deplete all of the funds in its possession. By the motion, JITC sought

6

an order: a) prohibiting the relocation, destruction or altering of any Ren business records; b) preventing any transfer, spending, use or depletion of funds of any Ren financial account of any kind, including all merchant accounts; c) preventing Ren from moving, transferring, selling, or modification of any asset in its possession or control; d) requiring Ren to provide to the counsel and the court within 5 business days a detail of all payments, withdrawals, transfers, and wires, in addition to providing the past 120 days of complete bank or other financial account statements, through the date of entry of the order granting the temporary restraining order; e) requiring Ren, and its officers, Dmitry Lesnevsky, Elena Lesnevskaya, and Elena Muravina, Esquire, to provide a declaration under penalty of perjury detailing all money, assets, or other income received from or on behalf of Ren since January 1, 2017; and f) freezing all assets of Ren and preventing any action on behalf of Ren by any party absent an order authorizing such action from this Court. *Id.* at 18.

The district judge denied the motion, but determined that "Plaintiff may present the verified facts contained within [its motion] at the November 9, 2017 hearing before the Magistrate Judge. (Doc. 23).

At the November 9 hearing, Plaintiff modified its request again and now seeks: a) to freeze Ren's merchant services account, which it believes contains somewhere between $600,000 and $1 million;[2] b) an order requiring Ren to provide access or up-to-date accounting of the Thursday night sell-off proceeds; and c) an order prohibiting Ren from making "public

---

[2] Plaintiff claims $206,381.92 is owed to it from the merchant services account, but concedes that the remainder of the funds do not belong to it.

comments" disparaging to JITC. Defendant opposes the request largely on the same grounds as outlined above.

Initially, on the matter of this Court's jurisdiction to entertain the request for injunctive relief despite the arbitration provision, the question does not appear to have been addressed in an Eleventh Circuit or binding former Fifth Circuit decision.[3] However, the First, Second, Third, Fourth, Sixth, and Seventh Circuits have found jurisdiction is proper and a district court may grant preliminary injunctive relief pending arbitration, if the requirements for injunctive relief are met. *See Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43 (1st Cir. 1986); *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York*, 749 F.2d 124, 125 (2nd Cir. 1984); *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir. 1989); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1052–54 (4th Cir. 1985); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1380 (6th Cir. 1995); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 213–14 (7th Cir. 1993). The Ninth Circuit has rendered a decision consistent with such finding, *PMS Distrib. Co. v. Huger & Suhner, A.G.*, 863 F.2d 639, 642 (9th Cir. 1988) (relying on foregoing decisions of First, Second, and Seventh Circuits to authorize issuance of writ of possession pending arbitration). Only the Eighth Circuit has held to the contrary. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286 (8th Cir. 1984).

---

[3]In *American Express Financial Services, Inc. v. Makarewicz*, 122 F.3d 936 (11th Cir. 1997), the Eleventh Circuit found that the district court erred in denying injunctive relief on the ground that the parties intended the arbitrator to decide whether to grant such relief. In *Makarewicz*, however, the contract contained an express provision that "you agree that [American Express] is entitled to an injunction from a court of competent jurisdiction to keep you from violating these restrictions while the arbitration is pending." *Id.* at 940.

8

Defendant states that the FAA precludes injunctive relief, citing *Hovey*, and submits without explanation that "the Eleventh Circuit would follow the minority rule set forth in *Hovey*." (Doc. 15 at 20 and n.28).

Upon review of the authorities referenced herein, the Court finds the majority view persuasive, and the district court maintains jurisdiction to entertain Plaintiff's motion for preliminary injunctive relief despite ordering the parties to arbitration.

Turning to the merits of Plaintiff's request, Rule 65(a) of the Federal Rules of Civil Procedure governs the entry of a preliminary injunction. The purpose of a preliminary injunction is to maintain the *status quo* until the court can enter a final decision on the merits of the case. *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). A party seeking entry of a preliminary injunction must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (quotations omitted).

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Id.* (quoting *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009)). The entry of a preliminary injunction is "the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)). Further, Local Rule 4.06(b)(1) provides that a party applying for a preliminary injunction must support the allegations by

specific facts shown in a verified complaint or accompanying affidavits. M.D. Fla. R. 4.06(b). In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

At the outset, it bears noting that the stated relief sought by Plaintiff in his motion, and as revised thereafter, is largely for affirmative relief. Plaintiff does not seek to maintain the *status quo*, but instead seeks by way of preliminary injunction an order to preserve funds for the eventual judgment or arbitration award, to expedite discovery of Ren's business records, and for restraint on Ren's comments about this suit or its relationship with JITC. This type of mandatory preliminary injunctive relief is particularly disfavored and the party moving for such bears an even heavier burden.

"A typical preliminary injunction is prohibitive in nature and seeks simply to maintain the *status quo* pending a resolution of the merits of the case." *Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1295 (M.D. Fla. 2010). When a preliminary injunction is sought to force another party to act, rather than simply to maintain the *status quo*, it becomes a "mandatory or affirmative injunction" and the burden on the moving party increases. *Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp.,* 441 F.2d 560, 561 (5th Cir. 1971). Such relief "'should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party.'" *Id.* (quoting *Miami Beach Fed. Sav. & Loan Ass'n v. Callander,* 256 F.2d 410, 415 (5th Cir. 1958)); *see also Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.").

In this instance, Plaintiff has simply not made a showing that preliminary injunctive relief—let alone affirmative or mandatory injunctive relief—is warranted here.

Significantly, Plaintiff makes no claim for permanent injunctive relief in this case, but rather seeks money damages and performance of the terms of the Agreement. (*See* Doc. 9). The undersigned sees no basis to grant preliminary relief in the absence of a request for permanent relief. In addition, Plaintiff fails to meet its burden that there is a substantial threat of irreparable injury.

As regards JITC's request for an asset freeze of Ren's merchant services account, it appears such is simply aimed at preserving funds claimed due under the Agreement and is not appropriate for injunctive relief. While JITC argues, without evidentiary support on this motion, that $206,381.92 is owed to it from the merchant services account, thereby creating a "constructive trust," it admits that the remainder of the account is likely owed to other individuals or entities.[4] In appropriate circumstances, a district court may impose a preliminary injunction with an asset freeze of specific property in the prejudgment setting. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (noting that "[a] request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief.") (citing *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984)). However, "preliminary injunctive relief freezing a defendant's assets in order to establish a fund with which to satisfy

---

[4]Plaintiff's argument is that the funds in this account must logically contain the sell-off proceeds because all such transactions would have been via credit card transactions with deposits going into the merchant account and none of the funds were paid over to Plaintiff. Such may well be the case, although Plaintiff has made is no showing thereof.

11

a potential judgment for money damages is simply not an appropriate exercise of a district court's authority." *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1530 (11th Cir. 1994); *see also Mitsubishi International v. Cardinal Textile Sales*, 14 F.3d 1507, 1521 (11th Cir. 1994), cert. denied, 513 U.S. 1146 (1995) ("a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment.") (citing *In re Fredeman Litigation*, 843 F.2d 821, 824 (5th Cir. 1988)). The factual circumstances with regard to the merchant services account do not, without more, create a constructive trust to warrant equitable relief. JITC makes no claim for fraud, and such is not demonstrated. Indeed, this is simply a breach of contract case, which presents no valid basis to freeze any of Defendant's assets.[5]

Further, the Plaintiff has entirely failed to demonstrate how it will suffer irreparable harm in the absence of injunctive relief. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (quoting *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983)). Plaintiff seeks monetary

---

[5]Although Federal Rule of Civil Procedure 64 provides for seizure of assets under state law, Plaintiff makes no claim for attachment under Florida law. In actions at law, plaintiffs in Florida possess an exclusive prejudgment remedy for the sequestration of assets under the attachment statute. Fla. Stat., §§ 76.04, 76.05. Plaintiff here does not invoke Florida law, nor does it satisfy the enumerated statutory grounds for relief. *See id.*

compensation for alleged breaches of the Agreement.[6] Plaintiff has an adequate remedy at law, and there is no showing to the contrary.[7]

Finally, as to JITC's request for this Court to enjoin Ren or its agents from making "public comment" or disparaging comments during the course of these proceedings, such is due to be denied. It is well-settled that prior restraint on speech is presumptively unconstitutional. *See, e.g., Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 558 (1976) ("Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity.") (citing *Carroll v. Princess Anne*, 393 U.S. 175, 181 (1968); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)). Only in the most extreme circumstances will a prior restraint on speech be upheld. "Indeed, the Supreme Court has never upheld a prior restraint, even faced with the competing interest of national security or the Sixth Amendment right to a fair trial." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226–27 (6th Cir. 1996). Plaintiff has failed to satisfy its heavy burden to overcome the presumption that the requested order directing "no public comments" would be an unconstitutional prior restraint under the First Amendment.

In sum, Plaintiff's request for a preliminary injunction is appropriately denied. Neither Plaintiff's allegations, nor its cited authority, demonstrate that the relief sought is warranted.

---

[6]As JITC admits the claim for tortious interference with business relationships has been rendered moot by Ren closing down its operations.

[7]To the extent JITC seeks access to the accounting for Thursday night sell-off transactions, the Court fails to see any urgency to this request. Such is more appropriately requested via discovery within the arbitration process.

**IV.**

Accordingly, for the reasons set forth above, I **RECOMMEND** that:

1) **Defendant's Motion to Compel Arbitration and Stay Proceedings** (Doc. 8) be **GRANTED** and this action stayed pending completion of arbitration; and

2) **Plaintiff's Motion for Preliminary Injunction** (Doc. 10) be **DENIED.**

Respectfully submitted this
14th day of November 2017.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
The Honorable James S. Moody, United States District Judge
Counsel of record